AO 106 (Rev. 04/10)  Application for a Search Warrant

## UNITED STATES DISTRICT COURT
for the
District of Hawaii

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 08 2019

at 10 o'clock and 36 min. A M
SUE BEITIA, CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

1701 Skyline Drive
Honolulu, Hawaii 96817

)
)
)
)
)

Case No.  MAG NO. 19-637KSC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ Hawaii _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2422(b) & 2251(a) | Enticement of a Minor; Sexual Exploitation of Children |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Evelyn Ramo, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 07/05/2019 _____

City and state:  Honolulu, Hawaii

_____
*Judge's signature*

HON. WES REBER PORTER, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

EVELYN RAMO, being first duly sworn, hereby deposes and states the following:

1.      I am a Special Agent with Homeland Security Investigations ("HSI"), presently assigned to the Honolulu Office, Cyber Group.  I have been employed as a Special Agent with HSI since May 1998.   I have investigated and assisted in criminal cases, including internet crimes against children, drug smuggling, human smuggling, human trafficking, fraud, illegal exports and other violations.  I have received training in the investigation of the sharing of child pornography on peer-to-peer networks, chat groups, and chat rooms, including training provided by the Internet Crimes Against Children ("ICAC") task-force for the investigation of individuals enticing minors to engage in sexually explicit activities, and downloading and/or sharing child pornography.

2.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  I am familiar with the facts set forth in this affidavit based upon my personal knowledge and/or information provided to me by other law enforcement personnel and/or witnesses.  Summaries and statements from conversations do not include references to all topics covered in the conversations.  This affidavit is not intended to include each and every fact and matter observed or known to the government.

3.      I am submitting this affidavit in support of an application for a search warrant to search the premises of **1701 Skyline Drive, Honolulu, Hawaii**, more specifically described in Attachment A hereto (referred to herein as "SUBJECT PREMISES"), for the items listed in Attachment B hereto.  Based on the facts set forth below, there is probable cause to believe that evidence, fruits and/or instrumentalities will be found at the SUBJECT PREMISES relating to persuading, inducing, enticing, or coercing an individual who has not attained the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense in violation of Title 18, United States Code, Section 2422(b), and relating to employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct with the knowledge that such visual depiction will be transmitted using a means or facility of interstate or foreign commerce in violation of Title 18, United States Code, Section 2251(a).

4.      I request this search warrant pursuant to Rule 41(e)(2)(A) and (B).  The applied-for warrant would authorize the forensic examination of the items seized for identifying electronically stored data particularly described in Attachment B.

### APPLICABLE LAW

5.      Title 18, United States Code, Section 2422(b), makes it a federal crime for any person to knowingly use any facility or means of interstate or foreign

2

commerce to knowingly persuade, induce, entice or coerce any individual who has

not attained the age of 18 years to engage in any sexual activity for which any

person can be charged with a criminal offense.

6.      Title 18, United States Code, Section 2251(a), makes it a federal

crime for any person to employ, use, persuade, induce, entice or coerce a minor to

engage in sexually explicit conduct for the purpose of producing any visual

depiction of such conduct, if such person knows or has reason to know that such

visual depiction will be transported or transmitted using any means or facility of

interstate or foreign commerce.

## BACKGROUND

7.      On March 24, 2019, Neil BOTH-MAGNISI ("the Defendant") was

arrested for attempted enticement and coercion of a minor, in violation of 18

U.S.C. § 2422(b).

8.      On or about July 3, 2019, federal law enforcement received

information from the Honolulu Police Department that a reporting individual, who

is a friend of Nanci Both, mother of Defendant, made a police report stating that

the Defendant instructed his mother when she visited the Defendant at the Federal

Detention Center (FDC) on June 30, 2019, to retrieve several toy cars from the

SUBJECT PREMISES, which is the home of the Defendant and where Ms. Both

now resides.  These toy cars are purportedly equipped with hidden video recording

3

equipment. The reporting individual indicated that the Defendant instructed Ms. Both to destroy these items.

9.    These items are believed to be stored at the Defendant's residence located at 1701 Skyline Drive, Honolulu, Hawaii 96817.

10.    As a result of my training and experience and the experience of other law enforcement personnel involved in this investigation, I know that individuals who have a sexual interest in minors and are engaged in child sexual exploitation often utilize electronic video recording devices to record and store images and videos for their sexual gratification. I also know that individuals who engage in the sexual exploitation of minors often produce, share, and distribute images and videos of child pornography with other pedophiles, and use it to communicate with minors in an effort to entice minors to engage in sexual activities.

11.    The Defendant has a prior criminal history when he was convicted in 2002 for the offense of Sexual Assault 4 of the Hawaii Revised Statute section 707-0733, and as a result is a registered sexual offender in the State of Hawaii. The victim at the time of that offense was a minor.

## PROBABLE CAUSE

12.    On March 19, 2019, an undercover law enforcement officer ("the UC") posted a profile on a social media and dating application (referred to herein as "the App"), which allows users to interact with other users with text messages

4

and photos. The App also incorporates geolocation functionality, which allows its users to view other profiles that are close to them in proximity. Users can download the App to a mobile phone or digital device and engage in messaging directly with other users.

13.     The UC created a profile that displayed a photograph of a boy with a white hat, with the username "Rooster 94." Generally, the number next to the username on a profile represents the user's age, which is calculated by the date of birth a user inserts into his/her profile. In the biography section, which enables a user to insert an introductory sentence or phrase, the profile stated "Younger than you think." In the "looking for" section of the profile, the UC stated, "Chat, Dates, Friends, Networking, Relationship, Right Now." In my training and experience, the term "Right Now," indicates that a user is interested in sexual encounters within a short timeframe.

14.     That day, the profile received a message from another profile with a sexually-suggestive phallic eggplant symbol as a username together with the term, "ASAP," and the profile photo showing only a sunset, with no person. In the days following, the following conversation then took place:

> Defendant:  Hey... So how old do I think you are? ... You
> have me curious.  Message me if you log in today.
> UC:  You tell me
> Defendant:  22?  Or are you younger?
> UC:  Nope I'm way younger than that...I'm 13

> Defendant:  Damn lol ... Nice.  What are you doing on
> here?

After further conversation, on March 21, 2019, the UC asked the Defendant for a

photo of himself.  The following conversation took place:

> UC:  Only if i can see you first
> Defendant:  Forgive me if I don't send a face picture to
> somebody who is 13 ... That's just like asking to go to jail
> UC:  Lol, is it?
> Defendant:  Basically
> UC:  How so?
> Defendant:  I might be a pedophile but I don't want
> everybody to know it ... And you do you kind of seem too
> good to be true ...

The Defendant later sent the following message:  "If I were to come to you ...

What would you want to do ... Cause I'm into young boys."  Later, the Defendant

wrote, "I'm not saying I would want to fuck you if you're not ready for it ... But

I'm down to suck the fucking cum out of your cock."

15.     Later in the conversation, the UC and the Defendant exchanged phone

numbers and text messages.  At one point in the conversation, the Defendant

wrote, "You think you can handle this dick?"  The UC responded, "psst..yes!  got

lube and condoms?"  The Defendant responded, "Yup."  Later, while discussing

meeting up in person, the Defendant wrote, "How long is your dick ... I should

buy you some condoms too."

16.     The UC and the Defendant arranged a location to meet in person.

After showing up at this location, within the District of Hawaii, on March 24,

2019, the Defendant requested multiple additional photos of the UC, writing,
"Listen I just need to be sure that you are who you say you are ... As soon as I am
sure of that we can do anything you want to do ... I drove all the way out here to
meet you." The Defendant wrote that he had gotten out of his truck to walk
around, but wasn't able to locate the purported minor. He continued to request
photos of the minor, writing, "You're just not the one that's risking jail." At
approximately 5:48 PM, the Defendant wrote to the UC, "I'm the guy in the black
van." Law enforcement identified a black van near the meet location and
converged upon it. Law enforcement officer ordered the Defendant out of the van.
To determine whether the Defendant was in possession of the same phone used to
text with the UC, law enforcement called the phone number associated with the
text messages sent to the UC. A black iPhone that was near the Defendant's
person instantly rang. Law enforcement arrested the Defendant without incident
and placed his cellphone into evidence.

17.     On or about July 3, 2019, Federal Bureau of Investigation (FBI)
Special Agent Sherwin Chang contacted me that he received information from the
Honolulu Police Department (HPD) regarding a report relating to the Defendant.
HPD related to SA Chang that on July 2, 2019, an individual, who identified
her/himself by name, visited the Pearl City HPD station and spoke with an HPD

officer. The name of the individual is known to HPD, as well as to the FBI and to me, but is being withheld from this affidavit.

18.     The individual claimed to be a friend of the Defendant's mother, Nanci Both, and was aware that the Defendant is facing criminal charges relating to child exploitation. The individual explained to an HPD officer that s/he had spoken with Ms. Both earlier that day on July 2, 2019, and that Ms. Both confided in her/him that she had visited the Defendant at the Federal Detention Center, Honolulu (FDC) on June 30, 2019.

19.     According to the individual, the Defendant indicated to Ms. Both that the "Feds" were mostly likely going to search the SUBJECT PREMISES. In anticipation of this, the Defendant instructed Ms. Both to search the SUBJECT PREMISES for certain items that belonged to the Defendant and dispose of them. In the report to HPD, the individual indicated that Ms. Both reported that she searched the SUBJECT PREMISES and located 12 to 15 black toy cars. The reporting individual said that Ms. Both appeared to understand that the toy cars were equipped with hidden video recording equipment. The reporting individual believed that these toy cars contained child pornography.

20.     On July 5, 2019, I obtained the HPD report relating to the above information. Subsequent to my receiving this report, FBI SA Chang obtained the reporting individual's contact information and spoke with him/her directly. The

8

individual verified that he/she has regular professional interaction with Ms. Both as a result of their respective employment, and the two socialize while working several times per week.

21.    The individual verified the facts of the HPD report to SA Chang, but added that Ms. Both had told her that she had found as many as 20 toy cars. The individual then explained that Ms. Both had physically brought one of the Defendant's black toy cars with her to work and showed it to him/her. The individual explained that Ms. Both produced one of the black toy cars, and placed it in her/his hand. The individual described the car as being "skinny" with four doors. Ms. Both then asked the individual if s/he could see a camera. The individual told FBI SA Chang that s/he thought that a lens was visible in the car.

22.    The individual reported to FBI SA Chang that s/he told Ms. Both that Ms. Both should not be touching the toy car. The individual reported that after this interaction, she was in text message communication with Ms. Both. Shortly after

speaking with Ms. Both, the individual went to HPD to report her interaction with Ms. Both.

23. According to information received from U.S. Pretrial Services, the Defendant resides at 1701 Skyline Drive, Honolulu, Hawaii 96817. I understand that Ms. Both currently resides at 1701 Skyline Drive.

24. Because I believe there is a reasonable probability that the video recording devices referred to above may be imminently destroyed, I believe that probable cause exists for a search warrant to be executed outside the hours of 6:00 a.m. and 10:00 p.m.

## DEFINITIONS

24. "Child Pornography" as used in this affidavit, is defined pursuant to Title 18, United States Code, Section 2256(8):

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where –
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> (C) such visual depiction has been created, adapted, or modified to appear that an

10

identifiable minor is engaging in sexually
explicit conduct.

25.    "Minor" as used in this affidavit, is defined pursuant to Title 18,
United States Code, Section 2256(1) as "any person under the age of eighteen
years."

26.    "Sexually Explicit Conduct" as used in this affidavit, is defined
pursuant to Title 18, United States Code, Section 2256(2) as "actual or simulated
(i) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether
between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv)
sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals of pubic
area of any person."

27.    The terms "records," "documents," and "materials" include all
information recorded in any form, visual or aural, and by any means, whether in
handmade form, (including, but not limited to, writings, drawings, paintings),
photographic form (including, but not limited to, microfilm, microfiche, prints,
slides, negatives, videotapes, motion pictures, photocopies), mechanical form
(including, but not limited to phonograph, records, printing, typing), or electrical,
electronic, or magnetic form (including, but not limited to, tape recordings,
cassettes, compact disks, electronic or magnetic storage devices such as floppy
diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital

Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks,

smart cards, as well as digital data files and printout or readouts from any

magnetic, electrical, or electronic storage device).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.    Based on my knowledge, training, and experience, and conferral with

other law enforcement agents who specialize in the examination of forensic

evidence, I know that electronic devices can store information, including

information relating to images and videos, for long periods of time. This

information can sometimes be recovered with forensics tools.

29.    *Forensic evidence.* As further described in Attachment B, this

application seeks permission to locate not only electronically stored information

that might serve as direct evidence of the crimes described on the warrant, but also

forensic evidence that establishes how the video recording device(s) was used, the

purpose of its use, who used it, and when. There is probable cause to believe that

this forensic electronic evidence might be on the device(s) because:

> a. Data on the storage medium can provide evidence of a file that was
> once on the storage medium but has since been deleted or edited, or of
> a deleted portion of a file (such as a paragraph that has been deleted
> from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy," while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device in the commission of an offense, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

30.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## **CONCLUSION**

I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the items described in Attachment B.

Respectfully submitted,

EVELYN RAMO
Special Agent
HOMELAND SECURITY
INVESTIGATIONS

Subscribed and sworn to
before me this  5th  day
of July, 2019.

WES REBER PORTER
UNITED STATES MAGISTRATE JUDGE
District of Hawaii

15